IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ANDREA HOLLOWAY, | Case No. 3:12-CV-00109-CL |
| Plaintiff, | |
| | REPORT & RECOMMENDATION |
| v. | |
| CAROLYN W. COLVIN, | |
| Defendant. | |

CLARKE, Magistrate Judge.

Plaintiff Andrea Holloway ("Holloway") challenges the final decision of the Social Security Commissioner ("the Commissioner") finding her not disabled and denying her application for Disability Insurance Benefits ("SSD") pursuant to the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, the court recommends that the Commissioner's decision be affirmed.

## PROCEDURAL HISTORY

Holloway applied for SSD on January 4, 2008, alleging an onset date of December 31, 2006. Tr. 141.[1] The Commissioner denied Holloway's application initially and upon reconsideration. Tr. 85-89, 100-03, 104-06. An Administrative Law Judge ("ALJ") held a

---

[1] "Tr." refers to the Transcript of the Administrative Record.

Page 1 – REPORT AND RECOMMENDATION

hearing on August 16, 2010. Tr. 29-80. On October 6, 2010, the ALJ issued a decision finding Holloway not disabled. Tr. 10-24. On November 23, 2011, the Appeals Council denied Holloway's request for review. Tr. 1-5. Accordingly, the ALJ's decision became the final decision of the Commissioner.

## FACTUAL BACKGROUND

Holloway was born in 1971. Tr. 39. She has a high school diploma and past work experience as a cashier/customer assistant, production worker, assistant, glassblower, grocery clerk, glass artist, and shipper/packager. Tr. 45, 162, 175, 189, 237, 66, 43. She alleges disability since December 31, 2006, due to sleep apnea, shoulder and hip problems, heart burn, fibromyalgia, anxiety, pain, depression, and confusion. Tr. 47-48, 61-64, 153-54, 156.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. Id.

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication continues beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p at *1 (*available at* 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); Bowen, 482 U.S. at 142; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. Id.

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g): 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Holloway had not engaged in substantial gainful activity after the alleged onset date. Tr. 15. At step two, the ALJ found that Holloway had the severe

impairments of sleep apnea, obesity, congenital hip dysplasia status post-surgical repair, fibromyalgia, degenerative disc disease, status post left shoulder rotator cuff repair, posttraumatic stress disorder, panic disorder with agoraphobia, bipolar disorder, and a history of polysubstance abuse. Id.. At step three, the ALJ found that Rush's impairments do not meet or equal any of the listed impairments. Tr. 16. The ALJ found that Holloway had the RFC to lift and carry ten pounds, stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Tr. 18. As part of the RFC, the ALJ found that Holloway could occasionally stoop, kneel, crouch, and crawl, and perform work involving short, simple, one-to-two step tasks, with minimal contact with the public. Id. The ALJ stated that Holloway could not have any exposure to environmental hazards such as machinery or heights, could not reach overhead, and that she needed a cane to assist her. Id.

At step four, the ALJ found that Holloway cannot return to any of her past relevant work. Tr. 22. At step five, the ALJ found that Holloway is capable of performing other work existing in significant numbers in the national economy, including as a polisher of eyeglass frames, a film touch-up inspector, and an assembler. Tr. 22-23. The ALJ therefore found Holloway not disabled within the meaning of the Act. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009) (*quoting* Andrews v.

impairments of sleep apnea, obesity, congenital hip dysplasia status post-surgical repair, fibromyalgia, degenerative disc disease, status post left shoulder rotator cuff repair, posttraumatic stress disorder, panic disorder with agoraphobia, bipolar disorder, and a history of polysubstance abuse. Id.. At step three, the ALJ found that Rush's impairments do not meet or equal any of the listed impairments. Tr. 16. The ALJ found that Holloway had the RFC to lift and carry ten pounds, stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Tr. 18. As part of the RFC, the ALJ found that Holloway could occasionally stoop, kneel, crouch, and crawl, and perform work involving short, simple, one-to-two step tasks, with minimal contact with the public. Id. The ALJ stated that Holloway could not have any exposure to environmental hazards such as machinery or heights, could not reach overhead, and that she needed a cane to assist her. Id.

At step four, the ALJ found that Holloway cannot return to any of her past relevant work. Tr. 22. At step five, the ALJ found that Holloway is capable of performing other work existing in significant numbers in the national economy, including as a polisher of eyeglass frames, a film touch-up inspector, and an assembler. Tr. 22-23. The ALJ therefore found Holloway not disabled within the meaning of the Act. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009) (*quoting* Andrews v.

Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing* Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (*citing* Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); *see also* Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.

## ANALYSIS

Holloway claims that the ALJ erred by improperly assessing her RFC, improperly relying on testimony of the Vocational Expert ("VE"), and failing to fully consider her obesity.

### I.    Holloway's RFC

Holloway first assigns error to the ALJ's formulation of her RFC. Holloway alleges that RFC did not fully incorporate the restrictions set out by the consultative examiner, Ben Kessler, Psy.D. In reference to Dr. Kessler, the ALJ's opinion states:

> Dr. Kessler opined that the claimant's ability to understand and remember instructions appeared commensurate with the general population (Ex. 15F/8). He noted that although she appeared drowsy, the claimant's ability to sustain her concentration, attention, and persistence appeared within the normal range for the duration of the time spent with her (Ex. 15F/8). Dr. Kessler noted that the claimant's cognitive difficulties did not interfere with her ability to engage and cooperate completely with the evaluation process, and he opined that she was capable of carrying out simple and routine tasks (Ex. 15F/8). Dr. Kessler's opinion is based on his objective mental health testing, and his opinion is consistent with that testing, which shows that the claimant is able to perform simple tasks, based on her performance on the Montreal Cognitive Assessment test (Ex. 15F/1). For these reasons, the opinion of Dr. Kessler is given great weight.

Tr. 20. Holloway alleges that the ALJ did not accurately summarize Dr. Kessler's opinion. Specifically, Holloway argues that the ALJ erred by failing to mention two statements from Dr. Kessler's assessment: his statement that "[c]laimant does okay in low stress environments, but historically when more duties are added and pressure mounts the claimant has had marked difficulty which interfered with her ability to carry out her duties," and his statement that "[c]arrying out instructions seems more limited by her physical pain and difficulty [with] mobility but that [sic] she could carry out instructions if this was accommodated for." Tr. 443, 442. Holloway contends that the ALJ erred by failing to discuss these statements and include them in the RFC.

An ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion. SSR 96-8p at *7. However, an ALJ is not required to "discuss every piece of evidence" in the record. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Here, the ALJ complied with the narrative requirements of SSR 96-8p. The four-page discussion summarizes the record evidence, identified what the ALJ relied on, and gave proper reasons for discounting the evidence that the ALJ found to not be credible. Tr. 18-22. The court finds that the ALJ's RFC analysis is not in error.

Even if the ALJ did err in failing to specifically discuss Dr. Kessler's statements regarding Holloway's physical pain and stress, however, such error is harmless. *See* Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citations omitted*) (ALJ's error is harmless if it is inconsequential to the ALJ's ultimate nondisability determination). The RFC addresses Holloway's pain and difficulties with mobility by stating that Holloway needs a cane to assist her and cannot reach overhead, and by limiting amount Holloway can stand, sit, kneel, crouch, and crawl. Tr. 18. Likewise, the RFC states that Holloway should be limited to "work involving

Page 6 – REPORT AND RECOMMENDATION

short, simple 1-2 step tasks." Id. These limitations reflects an accommodation of Holloway's need to reduce physical pain and work in low-stress environments with limited duties.

Though Holloway contends that the sample occupations are production-oriented and thus would be jobs where "more duties are added and pressure mounts," Dr. Kessler's statement about Holloway's needs do not indicate that her abilities are restricted in this way. As the Commissioner points out, Dr. Kessler stated that Holloway should avoid jobs involving a large number of duties, not jobs based on volume or production. This is consistent with Dr. Kessler's finding that Holloway had moderate difficulties in carrying out instructions. Tr. 442. The sample occupations given by the VE also correspond with this RFC. The occupation of an assembler, for example, is a sedentary job that involves only two duties. Dictionary of Occupational Titles ("DOT") 734.687-018. Dr. Kessler's statements do not conflict with the RFC and corresponding sample occupations.

## 2. Vocational Expert

Holloway also assigns error to the ALJ's reliance on the testimony of the VE in finding Holloway not disabled at step five. Holloway argues that the VE's testimony contradicts the DOT in regard to her need to use a cane. Specifically, Holloway contends that the occupations of an eyeglass frame polisher, a film touch-up inspector, and assembler require frequent or constant reaching, and argues that she cannot both use a cane and meet the reaching requirements for these positions.

An ALJ has a duty to inquire whether there is consistency between the VE's testimony and the DOT. SSR 00-4p at *2 (*available at* 2000 WL 1898704); Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). If there is a conflict, the ALJ may rely upon a VE's testimony rather than the DOT when the issue is "complex," 20 C.F.R. § 404.1566(e), or when "the record

contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The decision to use a VE is reserved for the Commissioner. 20 C.F.R. § 404.1566(e).

In this case, the ALJ properly inquired about inconsistencies between the VE's testimony and the DOT: the ALJ asked if he could assume that the VE's testimony was consistent with the DOT unless told otherwise, and the VE responded affirmatively. Tr. 66. The VE did not note any contradictions, and the ALJ found that the testimony was consistent with the DOT. The court agrees with this assessment and finds that the ALJ's reliance on the testimony of the VE was not in error. As a preliminary matter, there is no actual conflict between the VE's testimony and the DOT; the DOT does not state that use of a cane restricts the abilities of an eyeglass frame polisher (DOT 713.684.038), film touchup inspector (DOT 726.684-050), or assembler (DOT 734.687-018). Moreover, there is no apparent conflict between the VE's testimony and the DOT. Indeed, the record reflects that Holloway had no issues reaching outward despite the use of a crutch or cane; both the consultative examiner and the DDS examiner noted that while Holloway needed to use a crutch, she had no manipulative restrictions, including restrictions on reaching. Tr. 408-09, 413. There is no evidence that Holloway could not perform the reaching requirements for the sample occupations.

Holloway also asserts that the identified jobs do not provide for her limitations in regard to dangerous machinery. The ALJ found that Holloway could not "have any exposure to environmental hazards such as machinery or heights." Tr. 18. The ALJ incorporated this limitation into a hypothetical question for the VE, and relied on the VE's finding that such an individual could work as an eyeglass frame polisher, film touchup inspector, or assembler. Tr. 71-74. Holloway asserts that both the position of an eyeglass frame polisher and touchup

Page 8 – REPORT AND RECOMMENDATION

inspector violate this requirement because they involve the use of machinery. Holloway states that an eyeglass frame must use a polishing wheel, DOT 713.684-038, and that a film touchup inspector uses a knife to remove excess photoresist from film. DOT 726-684-050.

The court notes that the ALJ's RFC emphasized that Holloway should avoid "hazards," not all machinery. A polishing wheel and knife are not hazardous machinery that would preclude Holloway from performing the jobs of an eyeglass frame polisher or film touchup inspector. Moreover, if the VE's finding in error, this error is also harmless. The VE also testified that Holloway could perform the position of an assembler, a job that does not involve any hazards. This position has more than 239,000 jobs available in the national economy and 7,000 jobs in the regional economy, Tr. 74, thus satisfying the Commissioner's burden at step five.[2] The ALJ's reliance on the testimony of the VE does not warrant remand.

### 3. Obesity

Holloway's final assignment of error relates to the ALJ's discussion of her obesity. The Social Security Regulations require ALJs to "do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe," and states that ALJs must "explain how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p at *4, *7 (*available at* 2002 WL 34686281). In reference to Holloway's obesity, the ALJ found that Holloway's obesity was a severe impairment at step two, Tr. 15, but found that it was not of listing level severity at step three, stating:

> Regarding the claimant's obesity and fibromyalgia, although there are no specific medical listings for these conditions, I have considered their effects on each body system included in the listings, and find that the evidence does not show that obesity and fibromyalgia are of listing level severity.

---

[2] *See* Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (finding that 64,000 jobs in the national economy and 2,300 jobs in the local economy constitute a significant number for the ALJ's step five analysis).

Tr. 17. Holloway argues that the ALJ violated SSR 02-1p because he only evaluated her obesity in the context of listing level criteria, rather than explaining its contained impact with other impairments as required by the Regulations. Holloway does not state what specific symptoms are exasperated by her obesity, but rather contends generally that the RFC would have been different if the combined impact of her obesity was considered.

In this case, the court recommends that the ALJ's findings be affirmed. "The claimant has the burden of providing evidence as to how [her] obesity limits [her] functioning." McCullough v. Astrue, No. CV-10-6117-ST, 2011 WL 5873068, at *11 (D. Or. Sept. 1, 2011) (*citing* Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005)); Paap v. Astrue, No. 3:10-CV-6303-HZ, 2012 WL 652519 at *9 (Dr. Or. Feb. 28, 2012). Here, Holloways does not point to information in the record stating that her impairments are caused by her obesity or that her obesity exasperates her symptoms. *See* Lowe v. Astrue, Civ. No. 10-0904-MO, 2011 WL 4345168, at *4 (D. Or. Sept. 15, 2011) ("To succeed in an obesity claim, a claimant must show that his obesity exacerbates his other symptoms") (*citation omitted*). Because Holloway fails to meet her burden regarding her obesity argument, the ALJ's findings regarding Holloway's obesity should be upheld.

## RECOMMENDATION

For the reasons stated above, the court recommends that the decision of the Commissioner be AFFIRMED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. Objections to this Report and Recommendation, if any, are due fourteen (14) days from today's date. If objections are filed, any response to the objections is due fourteen (14) days from the date of the objections. *See* FED. R. CIV. P. 72, 6.

DATED this _____ day of MAY, 2013.

_____
MARK D. CLARKE
United States Magistrate Judge